IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROGER BUEHL, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Civil Action No. 03-1313 |
| | ) | Judge Terrence F. McVerry |
| JEFFREY BEARD, ET AL., | ) | Magistrate Judge Hay |
|     Defendants. | ) | |
| | ) | Dkt. [119] |

REPORT AND RECOMMENDATION

I.    RECOMMENDATION

It is respectfully recommended that the Motion for Summary Judgment, Dkt. [119], filed by the DOC Defendants be granted.

II.    REPORT

**A.  Procedural History**

Plaintiff, Roger Buehl, is presently an inmate at the State Correctional Institution in Albion, Pennsylvania. In his original complaint, Dkt. [1], he named many defendants including, the Commonwealth Court of Pennsylvania and the Supreme Court of Pennsylvania. In an amended complaint, Dkt. [25], he deleted these two defendants[1] and named the following defendants: Jeffrey Beard, Secretary of Pennsylvania Department of Corrections ("DOC"); Sharon Burks, Chief Grievance Coordinator, DOC; Thomas James, former Chief Grievance Coordinator, DOC; Louis Folino, Superintendent at SCI-Greene; William Stickman, former Superintendent at SCI-Greene; Phillip Johnson, former Superintendent at SCI-Greene; Sharon

---

[1] As noted by the DOC Defendants, the two Courts have been improperly kept on the docket. Dkt. [120] at 1 n.1. On December 28, 2004, the Judicial Defendants were dismissed from this action on the basis of judicial immunity. Dkt. [57].

D'Eletto, Grievance Coordinator at SCI-Greene; and Carol Scire, Grievance Coordinator at SCI-Greene (collectively referred to as "the Commonwealth Defendants").[2]

Plaintiff alleges that DOC Defendants violated his Due Process and Equal Protection rights as protected by the Fourteenth Amendment when they seized and destroyed certain items of his property including several sexually explicit magazines and two key locks.[3]  After DOC Defendants filed a prior motion for summary judgment, Dkt. [49], and after Plaintiff filed a motion for partial summary judgment, the court issued a report recommending that the DOC Defendants' motion be granted in part and denied in part and that the Plaintiff's motion be denied.  Dkt. [72].  The District Court adopted the report.  Dkt. [82].

Subsequently, in May 2005, the Court issued an order setting a discovery deadline and other deadlines.  Dkt. [83].  Upon Plaintiff's request, the court extended the time for discovery and reset deadlines for dispositive motions.  Dkt. [91].  Thereafter Plaintiff filed a second motion for summary judgment.  Dkt. [102].  The court issued a report recommending that Plaintiff's second motion for summary judgment be denied.  Dkt. [111].  The report was adopted by the District Court.  Dkt. [116].  After dealing with Plaintiff's motion for summary judgment, the court then entered an order directing that the DOC Defendants file any dispositive motion by a date certain.  Dkt. [117].  The Defendants filed their motion to dismiss/summary judgment, Dkt. [119], (which the court ordered to be treated as a motion requesting summary judgment, Dkt. [127]) and a brief in support.  Dkt. [120].  In response to the DOC Defendants' motion for

---

[2]  The Amended Complaint also individually named all of the judges of the Pennsylvania State Supreme and Commonwealth Courts, all of whom were subsequently dismissed on grounds of absolute judicial immunity.  Dkt. [57].

[3]  It appears from the administrative grievance (No. 25385) filed by the Plaintiff that he also complained that corrections officers confiscated a pair of tweezers, which item is not mentioned in the Amended Complaint.  See Defendants' Motion to Dismiss/for Summary Judgment, Dkt. [119-2], at Exh. 2.

summary judgment, Plaintiff filed a Motion to Strike the DOC Defendants' summary judgment motion. Dkt. [129-1]. That motion to strike was denied. Dkt. [132].[4] Plaintiff filed an appeal to the District Court which affirmed. Dkt. [141]. Plaintiff also filed a response to the Defendants' motion for summary judgment. Dkt. [131]. That response contained only legal argument and no evidentiary materials. The Court ordered the DOC Defendants to file a reply to Plaintiff's response. Dkt. [142], which the Defendants did. Dkt. [143].

### B. Standard of Review

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial* ... or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the

---

[4] Contrary to Plaintiff's contentions, the Court was permitted to direct Defendants to file a second summary judgment motion, just as it had permitted Plaintiff to file a second summary judgment motion. Walker v. Gomez, 101 Fed.Appx. 200, 204 (9th Cir. 2004)("The district court did not err in permitting defendant Rath to file a second summary judgment motion as to Walker's retaliation claims. The district court effectively modified the pretrial conference order in its Order Continuing Trial Date and Addressing Various Other Motions. Its decision to do so was not an abuse of discretion because resolution of whether Walker had pursued his grievance could dispense with the need for trial.")(citations omitted).

evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Thus, it must be determined "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

    **C. Factual Background**

Plaintiff alleges that between 1983 and 1998, he purchased various publications, including erotic magazines, in accordance with former DOC directive DC-ADM 814 and was permitted to retain these publications in his personal property. In October of 1998, DOC issued Directive DC-803, which imposed strict limitations upon possession of sexually explicit magazines. On January 7, 2002, corrections staff at the State Correctional Institution at Pittsburgh (SCIP) confiscated several erotic magazines from Plaintiff's personal property during an inventory process. These magazines included "Cocoa and Black," "Hungry _____," and "Big _____ ___," with cover prices of $19.95, $19.95 and $40.00, respectively for a total new price value of approximately $80.00.

On January 23, 2002, Plaintiff filed grievance no. 12493 to contest the confiscation of his magazines. The February 22, 2002 response notified Plaintiff that the magazines were contraband and ordered their destruction. Plaintiff unsuccessfully appealed grievance no. 12493 through all levels of DOC administrative review.

Between 1999 and 2001, Plaintiff alleges that he purchased two padlocks from the SCIP commissary in accordance with DOC directive DC-ADM 815, and retained them as part of his personal property. The Plaintiff asserts the value of the padlocks to be approximately $20.00. On June 27, 2002, the padlocks were confiscated by staff at SCI-Greene as violative of SCI-

Greene policy. On July 16, 2002, Plaintiff filed grievance no. 25385 contesting the confiscation of the padlocks. The July 29, 2002 response notified Plaintiff that the padlocks were contraband and ordered their destruction. Plaintiff unsuccessfully appealed grievance no. 25385 through all levels of DOC administrative review.

Significantly, in neither of the two grievances did Plaintiff name any of the DOC Defendants.

### D. Discussion: Procedural Default

In support of their motion for summary judgment, the DOC Defendants point out that Plaintiff failed to name any of the Defendants in his grievances and so failed to properly exhaust his administrative grievances. The Defendants argue that pursuant to Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004), Plaintiff has procedurally defaulted his claims against all the DOC Defendants because he failed to name any of them in the grievances. Dkt. [127]. The Defendants are correct.

Pursuant to 42 U.S.C. § 1997(e)(a) of the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The pertinent Pennsylvania Department of Corrections ("DOC") policy establishing what administrative remedies are available to prisoners in DOC institutions was promulgated in DC-ADM 804.

The Court of Appeals has declared that DC-ADM 804 requires that the prisoner name individuals in the grievance whom he eventually sues in court in order to exhaust under the PLRA. In Spruill, the Court of Appeals was confronted with a situation where, although the Pennsylvania prisoner had filed a grievance, the grievance failed to mention one of the people whom the prisoner subsequently named as a defendant in a civil rights action based on the same

5

events as the grievance. The Court held that because the grievance did not mention the particular individual by the name of Brown, the prisoner-plaintiff had procedurally defaulted his claims against Brown. The holding of Spruill, in this respect, is precisely on point:

> [t]he passage quoted above regarding the contents of the grievance is also the only section of the Grievance System Policy requiring that the grievance identify specific persons. On this matter, the text is mandatory, or nearly so: "The inmate shall include a statement of the facts relevant to the claim.... The inmate should identify any persons who may have information that could be helpful in resolving the grievance. The inmate should also include information on attempts to resolve the matter informally." DC-ADM 804, Part VI.A.1.d. To the extent that Brown's identity is a "fact[ ] relevant to the claim"-and it is-it was mandatory for Spruill to include it. To the extent that Brown was a "person[ ] who may have information" or someone with whom Spruill made "attempts to resolve the matter informally"-and he was-Spruill was required to identify Brown if practicable. Spruill did not, and has offered no explanation for his failure to do so. Any grievance against Brown would now be time-barred. See DC-ADM 804, Part VI.A.1.e ("Grievances must be submitted by the inmate ... within fifteen (15) working days after the events on which the claims are based."). Thus Spruill has procedurally defaulted a claim against Brown by failing to identify him.

Spruill, 372 F.3d at 234.

Instantly, the Defendants have pointed to evidence, showing that Plaintiff did not even mention any of the DOC Defendants in either his first level grievances or any subsequent appeals therefrom. Dkt. [119-2] (the record of the two grievances and subsequent administrative appeals). Accordingly, the DOC Defendants have carried their summary judgment burden to produce evidence to show Plaintiff has failed to exhaust as to these Defendants. Ray v. Kertes, 285 F.3d 287, 293 n. 5 (3d Cir. 2002)(exhaustion is an affirmative defense which means defendants have burden of proof to establish non-exhaustion). Plaintiff has failed to point to any evidence to the contrary. See, e.g., Robinson v. Johnson, 313 F.3d 128, 134-135 (3d Cir. 2002) ("The purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed.").

6

In response, Plaintiff does not attempt to challenge the fact that he failed to name the Defendants in the grievance process. Rather, he argues the legal significance of not doing so. Plaintiff relies only on legal argument in regards to the procedural default issue.

His first argument is that there was no adequate remedy to address the destruction of his property because although the confiscation of his property was the subject matter of his initial grievances, he could not grieve the destruction of his property because that happened during the grievance process itself. Plaintiff cites to nothing in the record which precludes him from raising the issue of the destruction of his property during the grievance process in which he initially complained about the confiscation of his property. In fact, the evidence of record shows that Plaintiff did in fact address the destruction of his property and the grievance officer informed him in the initial response (Dkt. [119-2] at 4) to his Grievance No. 12493 that his property was contraband and would be destroyed. Plaintiff complained of the destruction of his property in the final review appeal. Dkt. [119-2] at 7 ("This grievance concerns the confiscation – and destruction – of erotic magazines confiscated from me by SCI-Pittsburgh staff. . . . Finally, even if the magazines are considered contraband, they were legally purchased and allowed in, and are still my property. Certainly, they should not have been destroyed. . . The institution violated my due process property rights by its ex post facto prohibition and destruction of my magazines. I am consequently entitled to fair reimbursement for my property."). This same holds true of Plaintiff's grievance and grievance appeals with respect to the two locks and tweezers. Dkt. [119-2] at 13 (first level appeal) ("Even if seizure of my property is upheld, it was lawfully mine and simply cannot be destroyed by SCI-Greene staff without violating my constitutional due process guarantees. I am therefore entitled to reimbursement for the value of my property."); id. at 15 (final appeal)("This grievance concerns the confiscation, seizure and destruction of my lawful property by SCI-Greene staff"). Hence, on this record, contrary to Plaintiff's argument,

7

not only was the grievance procedure an available remedy to Plaintiff, Plaintiff, in fact used the grievance procedure to complain of the destruction of his property. Accordingly, Plaintiff has not shown a material issue of fact with respect to the availability of the grievance procedure for the destruction of his property. See, e.g. Gereau-Bey v. Wallens Ridge State Prison, 205 Fed.Appx. 980, 981 (4th Cir. 2006) ("Gereau-Bey did not demonstrate to the district court that . . . such [administrative] remedies were not available"); Bell v. Ward, 189 Fed.Appx. 802, 803 (10th Cir. 2006)("The prisoner, however, may be excused from the exhaustion requirement where he can demonstrate that administrative remedies are unavailable"). Accordingly, this argument does not prevent the grant of summary judgment to the Defendants.

Plaintiff's next argument is that the Defendants have not pleaded or proved any directive or policy in effect at the time of Plaintiff's grievances required a prisoner-grievant to name names. Dkt. [131-1] at 2. While Plaintiff was correct that initially the DOC Defendants failed to provide the DC-ADM 804 policy in effect at the time Plaintiff was required to exhaust, they cured that defect in their reply to Plaintiff's brief in opposition to the DOC Defendants' summary judgment motion. Dkt. [143-1]. They supplied the relevant policy and it is identical to the policy language that the Spruill Court found required a prisoner-grievant to name the individuals in the grievance against whom the prisoner-grievant-plaintiff eventually brings suit. Compare Dkt. [143-2] at 32 (Administrative Grievance policy construed in Spruill v. Gillis)[5] with Dkt. [143-2] at 44 (Administrative Grievance policy in effect at the time Plaintiff was required to exhaust herein).[6]

---

[5] The pertinent language in the policy construed in Spruill provided that "[t]he inmate shall include a statement of the facts relevant to the claim. . . . The inmate should identify any persons who may have information that could be helpful in resolving the grievance."

[6] The pertinent language in the policy in effect at the time Plaintiff was required to exhaust provided that "[t]he inmate shall include a statement of facts relevant to the claim. . . .

Next, Plaintiff argues that although he did not name the Defendants in the grievances, "the names or titles of defendants who authorized, approved and sustained the destruction of the property at issue appear on the grievance responses or appeals and also on the directives and policies claimed to authorize such destruction." Dkt. [131-1] at 3.  However, Plaintiff's legal argument that because a party's name and/or title appears on a grievance form such is sufficient to satisfy Spruill is wrong as a matter of law.  First, as noted, by Spruill, the standard by which to measure whether a prisoner has exhausted his administrative remedies is whether he complied with the procedures set forth in the prison's rules for grievances or administrative remedies.  See, e.g., Spruill.[7]  Looking to that yardstick, it is clear what the grievance policy required of Plaintiff, namely, that "[t]he **inmate should identify** any persons who may have information that could be helpful in resolving the grievance." Dkt. [143-2] at 44 (emphasis added).  Here it is undisputed that Plaintiff did not identify any persons, at least not any persons who are named as Defendants herein.  As explained by Spruill: "[t]he purpose of the regulation here is to put the prison officials

---

    The inmate should identify any persons who may have information that could be helpful in resolving the grievance.").

[7]    The Spruill Court held that

> there simply is no express federal law describing the procedural requirements with which prisoners must comply in satisfying § 1997e(a)'s exhaustion requirement.   As between crafting judge-made law on this subject and looking to state prison grievance procedures, the latter will far better serve the policy interests of the PLRA. We have repeatedly noted above that the legislative history is clear that the PLRA was intended to return control of prisons to wardens;  one aspect of this was a comprehensive program of returning control of the grievance process. Mandatory exhaustion (with a procedural default component) ensures that inmate grievances will be addressed first within the prison's own system-in this respect, the PLRA is thus appropriately defederalizing.  Moreover, Congress repealed the portions of CRIPA that established federal standards-setting and certification for prison grievance systems.  It would be anomalous, to say the least, to refuse to give effect to the very rules that the PLRA encourages state prison authorities to enact.

Spruill, 372 F.3d at 231 (citation omitted).

9

on notice of the persons claimed to be guilty of wrongdoing. As such, the prison can excuse an inmate's failure to do so by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance." Spruill, 372 F.3d at 234.[8]  Here, the

---

[8]    It is in this aspect that the DOC regulations at DC-ADM 804, governing the exhaustion requirement in Pennsylvania state prisons, and which provides the yardstick by which we are required to measure exhaustion, Spruill, 372 F.3d at 231, distinguish this case from the Supreme Court case in Jones v. Bock, 127 S.Ct. 910, 923, 166 L.Ed.2d 798 (2007), wherein the court there held that failing to name the defendants in the Michigan State grievance procedure did not constitute a failure to exhaust, because there was no such requirement to do so contained in the Michigan state grievance policy nor was there any in the PLRA itself. In contrast to Pennsylvania's regulations, the State of Michigan's grievance procedure at issue in Jones v. Brock, contained no requirement to name individuals. As the Bock court noted:

> At the time each of the grievances at issue here was filed . . . , the MDOC policy did not contain any provision specifying who must be named in a grievance. MDOC's policy required only that prisoners "be as specific as possible" in their grievances, 1 App. 148, while at the same time the required forms advised them to "[b]e brief and concise." 2 id., at 1. The MDOC grievance form does not require a prisoner to identify a particular responsible party, and the respondent is not necessarily the allegedly culpable prison official, but rather an administrative official designated in the policy to respond to particular types of grievances at different levels. Supra, at 6. The grievance policy specifically provides that the grievant at Step I "shall have the opportunity to explain the grievance more completely at [an] interview, enabling the Step I respondent to gather any additional information needed to respond to the grievance." 1 App. 151. Nothing in the MDOC policy itself supports the conclusion that the grievance process was improperly invoked simply because an individual later named as a defendant was not named at the first step of the grievance process.

Bock, 127 S.Ct. at 922 . In contrast, the Court in Spruill has already held that the Pennsylvania DOC's grievance policy does contain such a requirement to name responsible individuals and that "[t]he purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." Spruill, 372 F.3d at 234. Hence, this case is distinguishable from Bock. But cf. Williams v. Beard, __F.3d. __, 2007 WL 973953 at *2 n.4 (3dCir. 2007):

> To the extent that Hollibaugh suggests that because Williams was to implicate him he was entitled to notice sooner rather than later, the Supreme Court recently noted that "early notice to those who might later be sued ... has not been thought to be one of the leading purposes of the exhaustion requirement." Jones v. Bock, --- U.S. ----, ----, 127 S.Ct. 910, 923, 166 L.Ed.2d 798 (2007).

This court understands Bock to state that whereas Congress' intent in the PLRA's

Plaintiff did not identify any of the Defendants in his grievances or appeals therefrom and so he did not "put them on notice of the persons claimed to be guilty of wrongdoing" within the contemplation of Spruill.  Unlike in Spruill, where the prison official charged with responding to Spruill's initial grievance identified Brown by name in the response, with the consequence that the Court of Appeals held the prison had excused the procedural default, here, **none** of the responses by the prison officials named any of the Defendants. At most, some of the Defendants names appeared as authors of the responses.  As explained below, this does not satisfy the Spruill requirement to name names.

Moreover, under Spruill, it is a Plaintiff's burden to explain why he did not name a defendant in the grievance.  See Spruill, 372 F.3d at 234 (Spruill did not [name Brown in his grievance] and has offered no explanation for his failure to do so.").  Plaintiff has offered no affidavit as to why he did not name the Defendants herein in his grievances.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n. 17 (1970)("This statement, being unsworn, does not meet the requirements of Fed.Rule Civ.Proc. 56(e)"); Vivid Technologies, Inc. v. American Science & Engineering, Inc., 200 F.3d 795, 812 (Fed. Cir. 1999) ("Unsworn statements set forth in a brief or memorandum of law submitted by a party generally are not proper summary judgment evidence."); Thornton v. U. S., 493 F.2d 164, 167 (3d Cir. 1974) ("A statement in a brief or in oral argument does not constitute evidence."); Chaiken v. VV Publishing Corp., 119 F.3d 1018,

---

statutory exhaustion requirement was not thought to have as one of its **leading** purposes early notice, such a purpose may have been a subordinate purpose.  Even if not a subordinate purpose of the Congress, early notice can be a purpose of the state policy (which provides the yardstick by which to measure exhaustion) and as Spruill seemed to at least imply, was such a purpose of the DOC policy.  Even if not a purpose of the DOC policy, it is clear, regardless of the purpose of the requirement, that Spruill requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default. See, e.g., Williams v. Pennsylvania, Dep't of Corrections, 146 Fed.Appx. 554, 557 (3d Cir. 2005)("his failure to identify defendants Herbert, Street, or Smith in either of his two grievances, means that he failed to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the PLRA.").

1033 (2d Cir. 1997)("Moreover, their unsworn letters do not satisfy the requirements of Fed.R.Civ.P. 56(e) and therefore cannot defeat VV's motion for summary judgment."). In light of the foregoing, and in the face of the Defendants' explicit argument that Plaintiff procedurally defaulted his claims against all defendants not specifically named in the grievance, the Plaintiff has not carried his burden under Spruill with respect to explaining why he failed to name the DOC Defendants in the grievances.

Because the time for filing any grievances against the Defendants has long passed,[9] the failure to exhaust his administrative remedies must be treated as a procedural default. See, e.g., Spruill v. Gillis, 372 F.3d at 230 (declaring that failure to abide by DOC's internal grievance procedures may result in procedurally defaulting a civil rights claim in federal court, reasoning that "[w]e believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. . . . Congress wanted to erect any barrier it could to suits by prisoners in federal court, and a procedural default rule surely reduces caseloads (even though it may be a blunt instrument for doing so)"); Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)("[t]o exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim .... these include time limits."); Berry v. Kerik, 366 F.3d 85, 86 (2d Cir. 2004)(holding that "in the absence of any justification for not pursuing available remedies, his [i.e., the prisoner's] failure to pursue administrative

---

[9] The DOC policy in effect at the time Plaintiff was required to exhaust establishes that "[g]rievances must be submitted by the inmate for Initial Review to the Facility Grievance Coordinator within 15 working days after the event upon which the claim is based." Dkt. [143-2] at 45, DC-ADM 804 § VI.A.1.h. It appears that this has been the policy since at least 1994 up to and including the present. See Davis v. Warman, 49 Fed.Appx. 365 (3d Cir. 2002)("See Commonwealth of Pennsylvania, Department of Corrections, Consolidated Inmate Grievance Review System, Policy No. DC-ADM 804 § VI.B.2. (Oct. 20, 1994) ('Grievances must be submitted for initial review ... within fifteen (15) days after the events upon which the claims are based.')").

remedies while they were available precluded his federal lawsuits, and they were properly dismissed with prejudice.") (footnote omitted).

Plaintiff's next argument against applying Spruill's procedural default component is that Spruill was not decided until 2004 roughly 2 years after he was required to exhaust his administrative remedies. He argues that the Defendants have not cited to any case holding that "the PLRA exhaustion requirement as now construed and applied, must be retroactively applied to grievances predating the development of the procedural default component." Dkt. [131-1] at 3. However, no case was cited because none was necessary, because Spruill was construing a statute, namely, the PLRA and it was determining what the PLRA's exhaustion requirement involved, namely, whether the requirement involved a procedural default component. In construing the PLRA exhaustion requirement to have such a component, the Spruill Court's construction of the PLRA statute meant that from its enactment, the statute possessed such a component. Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-313 (1994)("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."). Hence, Plaintiff's argument is singularly unconvincing, especially since Spruill applied its rule to bar the plaintiff's claims therein who, like Plaintiff, was required to comply with the DOC grievance system prior to the decision in Spruill (in fact, the Plaintiff in Spruill was required to begin to exhaust his administrative remedy beginning in May 2001 roughly eight months prior to when Plaintiff herein was required to begin to exhaust his administrative remedy). Moreover, to the extent that Plaintiff suggests any unfairness in this, the unfairness would be dependent on the claim that "I did not know that if I did not comply with the DOC policy for exhaustion I would procedurally default my claim." However, although he may not have known this fact, he did know, courtesy of the DOC grievance policy, that "[t]he inmate should identify any persons who may have

information that could be helpful in resolving the grievance." That he failed to do so was attributable solely to him and he fairly bears the risk of not complying with the grievance policy.

One final issue must be addressed, i.e., the question of whether Plaintiff's procedural default due to not naming any of the defendants should be excused. Plaintiff does seem to invoke the excusal doctrine announced in Spruill that his failure to name the Defendants in the course of the grievance proceedings should be excused. Dkt. [131-1] at 3 ("[m]oreoever, the names or titles of the defendants who authorized, approved and sustained the destruction of the property at issue appear on the grievance responses or appeals . . . . Such references are sufficient.")(citing Spruill, 372 F.3d at 234-35 (i.e., the portion of the opinion addressing the excusal doctrine).

In Spruill, the court held that the prison authorities had excused the procedural default because although the prisoner had not named one of the defendants, the person replying to the grievance did identify the defendant. The Spruill Court held that

> But the prison's grievance process excused this procedural default: The grievance officer's "Initial Review Response" (the first-level determination under the Grievance System Policy) identified Brown by name. Although the response identified Brown only as someone who had seen Spruill in the course of his medical visits, it is not to be expected that a response rejecting Spruill's grievances on the merits would identify any malfeasance on Brown's part. The purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. As such, the prison can excuse an inmate's failure to do so by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance.

Spruill, 372 F.3d at 234. The question arises then, did the prison's grievance process excuse Plaintiff's procedural default by "identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance." This court finds not. Nowhere did the responding prison officials identify persons in their responses, nor, by their mere signing off on the responses did they acknowledge that they were fairly within the compass of the prisoner's grievance. To hold them liable merely for their participation in the grievance

14

procedure would be unjustified.  The rule is that "[t]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."  Rauso v. Vaughn, 2000 WL 873285, *16 (E.D.Pa., June 26, 2000).  See also Hill v. Patrick, 2007 WL 709311, *5 (W.D. Pa. March 5, 2007); Caldwell v. Hall, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D.Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998); McGuire v. Forr, 1996 WL 131130, at *1 n. 1 (E.D.Pa. March 21, 1996); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D.D.C. 1995); Brown v. Dodson, 863 F. Supp. 284, 285 (W.D. Va. 1994); Orrs v. Cornings, 1993 WL 418361, at *2 (E.D.Pa. Oct. 13, 1993).  Cf. Bobko v. Lavan, 157 Fed.Appx. 516 (3d Cir. 2005) (individuals who were not personally involved in events underlying his prisoner's claims or who merely failed to respond to his letters about his grievance were not liable under § 1983).

One comment must be made about a recent decision from the Court of Appeals, namely, Williams v. Beard, __ F.3d __, 2007 WL 073953 (3d cir. April 3, 2007).  In Williams, a prisoner had twice warned, in writing, a defendant, named Hollibaugh, who was the prisoner's unit manager, that the prisoner's cellmate posed a threat to the prisoner.  The prisoner did so on October 20, 2003 and Hollibaugh responded that same date telling the prisoner to speak to the sergeant.  Williams v. Beard, No. 3:04-cv-2155 (M.D. Pa.  Dkt. 31 part 4 at 1)(available on PACER).[10]  The prisoner did so again on October 28, 2003, reminding Hollibaugh that "I have told you . . . I have to move from my celly[.]" Id., Dkt. 31, part 5 at 1.  Hollibaugh responded that same date to the prisoner's written request.  Subsequent to this, the cellmate attacked the prisoner on October 29, 2003.  The prisoner filed a grievance but did not name Hollibaugh in the

---

[10]   Specifically, the prisoner wrote that "I have asked the officers on 2 to 10 to move me because me and my celly are having major problems w[h]ere we need to be moved apart.  I fear something may happen if we are not separated and I don't want to be hurt.  Please move us apart." Id.

15

grievance.  Hollibaugh responded to the grievance in an "Initial Review Response," referred to by the Court as an IRR.  In that IRR, Hollibaugh, "acknowledg[ed] conversations Williams [i.e., the prisoner] had with the staff regarding the transfer request, but reject[ed] the grievance as lacking merit."  Williams v. Beard, 2007 WL 973953 at *1.   Hollibaugh also inexplicably asserted in the IRR that there was no indication of any problem prior to October 24, 2003 between the prisoner and his cellmate notwithstanding that Hollibaugh himself had signed the first writing filed by Plaintiff on October 20, 2003.  Subsequently, the prisoner sued in federal court naming as one of the defendants, Hollibaugh.  The District Court found that the prisoner had procedurally defaulted his claim against Hollibaugh because he failed to name him in the grievance.  The District Court also found that the prison did not excuse the prisoner's procedural default because "Hollibaugh in his response to the plaintiff's grievance does not indicate that he recognizes that the plaintiff is complaining about his [i.e., Hollibaugh's] conduct."  Williams v. Beard, 2006 WL 59334, *7 (M.D.Pa. Jan. 10, 2006).  In addition, the District Court, in determining that the prison did not excuse Plaintiff's procedural default, refused to consider the two writings of the prisoner signed by Hollibaugh that complained of the prisoner's cellmate and requested a transfer.  Id. at 8 ("in determining whether or not the prison excused a prisoner's failure to name a defendant in his grievance we do not think it is appropriate to consider and weigh evidence outside the grievance and grievance response.").

The prisoner took an appeal and the Court of Appeals reversed.  The Court of Appeals reversed the District Court on both bases.  As to the District Court's refusal to consider the two writings, the Appellate Court held that

> it would have been appropriate for the Magistrate Judge to have considered the two inmate requests submitted by Williams to Hollibaugh and signed by Hollibaugh. The Magistrate Judge's conclusion that such extrinsic evidence, which was a contemporaneous part of the prison record and bore directly on the grievance, could not be considered for purposes of determining whether the procedural default should have been excused was not required by Spruill or any

> other of our precedents. Indeed, the two requests show without question that Hollibaugh knew of Williams's attempts to be moved because of his fear of attack and that, those attempts having undisputedly been rebuffed by him, he was "fairly within the compass" of Williams's grievance.

Williams, 2007 WL 973953 at *3.  However, rather than remanding for the District Court to consider the evidence it had previously declined to consider in determining whether the prison had excused the prisoner's procedural default, the Court of Appeals addressed that issue in the first instance.  With respect to the prison's excusing the procedural default, the Court noted that

> [i]n the IRR, Hollibaugh identified himself as having had a conversation with Williams and as the "Grievance Officer," i.e. the person who would be approached regarding a cell change. Hollibaugh further stated that he interviewed the 2-10 staff when he received Williams's grievance alleging that he had been assaulted by his cellmate because the staff refused to move him as he had requested. According to Hollibaugh, no one interviewed by him acknowledged, nor did he himself acknowledge, that Williams had mentioned the seriousness of the situation before the assault; indeed, they all agreed that Williams had not. This is not surprising, and it is not surprising that Hollibaugh, while admitting to a conversation with Williams, did not admit to any inaction on his part where that inaction is the very basis of the grievance. See id. at 234 ("[I]t is not to be expected that a response rejecting Spruill's grievance on the merits would identify any malfeasance on Brown's part."). Parenthetically, we note that it is undisputed that Hollibaugh received and responded to Williams's written request of October 20, 2003 asking to be moved because he feared he would be hurt, directly contradicting Hollibaugh's assertion in the IRR that there was no indication of any problem between Williams and his cellmate prior to October 24.

Id. at 2.  Apparently, in light of what Hollibaugh said in the IRR, the Court found that the "IRR evidences knowledge on the part of prison officials not only that there was a problem but that Hollibaugh was involved." Id., at 3.

Although not clear, the following is what the Appellate Court appears to refer to as the conversation with the prisoner which Hollibaugh referenced in the IRR and admitted having with the prisoner prior to the assault: "I also remember that you came into my office on Tuesday 10/28/03 and spoke to me concerning your custody level.  At no time did you mention that you requested or needed a cell change." Williams v. Beard, No. 3:04-cv-2155 (M.D. Pa.  Dkt. 32 part 4 at 1)(available on PACER).  The Court of Appeals referenced this statement, apparently in

17

combination with the fact that Hollibaugh signed the IRR as the grievance officer (who, as such, in the words of the Court of Appeals, was "the person who would be approached regarding a cell change") in connection with its conclusion that the prisoner's procedural default for not naming Hollibaugh should be excused under Spruill.

Williams has a unique set of facts where a paper trail established that, contrary to Hollibaugh's assertions in the IRR, the prisoner therein did approach Hollibaugh in writing at least twice before the prisoner was attacked by his cellmate.  The Court of Appeals found that the Trial Court erred in not considering this paper trail.  The Appellate Court also found that in light of the paper trail, which should have been considered and which the Court of Appeals did consider, the prisoner's acknowledged procedural default was excused by and referenced the following two facts: 1) that Hollibaugh "identified himself [in the IRR] as having had a conversation with Williams[,]" i.e., the prisoner-plaintiff and 2) Hollibaugh identified himself as the grievance officer, which the Court of Appeals took to mean identifying himself as the person who would have been approached regarding a cell change.

In an effort to understand the import of Williams for the case at hand, the court will consider the legal significance of these two facts, taking up the second fact first.   Every prison official who is assigned to respond to an initial grievance will be identified as the "grievance officer" on the form. See, e.g., Williams v. Beard, No. 3:04-cv-2155 (M.D. Pa.  Dkt. 32 part 2 at p. 2-3, ¶IV.K.)(available on PACER)(DC-ADM 804 applicable in that case defining "Grievance Officer" as "[a]n appropriate Department Head or Management Level staff person designated by the Facility Grievance Coordinator, to provide Initial Review of an inmate grievance arising from his/her specific area of responsibility (e.g., a Unit Manager would be assigned to provide Initial

Review of grievance regarding a housing unit).").[11]  Hence, the fact that someone signed an IRR as the assigned "grievance officer" cannot be a sufficient condition for the finding of an excuse for procedural default unless every grievance officer is to be deemed to be "fairly within the compass of the prisoner's grievance."  Because everyone who responds to a grievance in the IRR, which is a pre-printed form utilized by DOC, will be signing off at the bottom of the IRR form in the box designated "Signature of Grievance Officer" we find the fact that such a signer is identified as a "Grievance Officer" of no legal significance and is not the legally significant fact upon which the Court of Appeals based its decision in Williams.  Were it otherwise, the mere signing of an IRR would excuse the naming of the grievance officer as a defendant, even though never named in the grievance process, a consequence that would gut Spruill's procedural default and excusal doctrines at least with respect to participants in the grievance procedure, and a consequence that we do not believe was intended by the Court of Appeals in Williams.  Nor will this court attribute such an intent to the Court of Appeals, without a statement much clearer than the language found in Williams.

     Rather, we find the legally significant fact to be that Hollibaugh was deemed by the Court of Appeals to have identified himself as having been part of the problem in the lead up to that assault by acknowledging a conversation with Plaintiff.  We find this fact, coupled with the fact of the paper trail, which contradicted what was written by Hollibaugh in the IRR, to be the legally dispositive facts in Williams v. Beard, and on that basis find the case at hand distinguishable on its facts from Williams. Hence, the mere fact that some of the DOC Defendants signed the responses to the grievances and/or grievance appeals, does not mean that Plaintiff's failure to identify them in the grievances excuses his procedural default.  Even less so does the mere fact that some of the DOC Defendants' names or titles allegedly appear on the

---

[11]    Not coincidentally, Hollibaugh was the prisoner's unit manager and so, was designated to respond to the prisoner's initial grievance as the "grievance officer."

policies or directives that authorized the destruction of Plaintiff's property excuse his failure to name them in the grievances.

Accordingly, Plaintiff has not established a material factual dispute with respect to the issue of his procedural default having been excused merely by the fact that the Defendants either signed his grievances or their titles/names appeared on the grievance forms, much less on the policies or directives that authorized the destruction of his property. Accordingly the DOC Defendants are entitled to summary judgment.

III.  CONCLUSION

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 7 May, 2007

cc:   Hon. Terrence F. McVerry
      United States District Judge

      Roger Buehl, AM-7936
      SCI-Albion
      10745 Route 18
      Albion, PA 16475-0004

      Mariah Passarelli, Esquire by Notice of Electronic Filing